UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CR-373-1FL
No. 5:12-CR-373-2FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | MOTION FOR ORDER RELIEVING |
| | ) | GOVERNMENT OF CERTAIN |
| DONNIE FLYNN KING, SR | ) | OBLIGATIONS UNDER PLEA |
| LOU WELLS KING | ) | AGREEMENT |
| _____ | ) | |

The United States of America submits this motion to the Court seeking relief from some of its obligations under the plea agreements reached with the defendants in this matter. The Fourth Circuit has held that ". . . a breach [of a plea agreement] relieves the government of its obligations to conform to the agreement's terms even when the defendant has relied to his substantial determinant by, for example, entering his guilty plea, subjecting himself to conviction . . ." United States v. West, 2 F.3d 66, 70 (4th Cir. 1993).

Because we believe that the defendants have materially breached the terms of their plea agreements, the United States respectfully requests that the Court schedule a hearing at which we propose to submit evidence regarding said breach. If, after such hearing, the Court were to find a breach by a preponderance of the evidence, the United States would then seek permission

1

from this Court to be relieved of its obligations under the terms of the plea.[1]

**I.   BACKGROUND**

In 2009, the defendants herein, Donnie Flynn King, Sr. and his wife Lou Wells King (Hereinafter referred to as "the Kings") filed a petition for relief under Chapter 11 of the Bankruptcy Code. After filing, the Kings made false statements under oath and concealed the full scope of their income from the Bankruptcy Court. Specifically, the Kings knowingly and willfully failed to disclose $161,951.37 in annuity payments that they had been receiving. As a result of their malfeasance, the Bankruptcy Court denied the Kings a discharge of their debts in October 2011, converted the matter to a Chapter 7 case, and entered a default judgment against them. *See* In re: Donnie Flynn King, Sr. and Lou Wells King (Bankr. E.D.N.C., 09-06765-8-JRL).

A criminal investigation by the Federal Bureau of Investigation (FBI) ensued, and on November 19, 2012, the Kings were charged in a single count criminal information with committing bankruptcy fraud in violation of 18 U.S.C. §§ 157(3) and 2. Both defendants signed written plea agreements. Most relevant for purposes of this motion, the plea agreements obliged both defendants to: 1) "To complete and submit . . . a

---

[1] *See* United States v. Connor, 930 F.2d 1073, 1076 (4th Cir. 1991) for the proposition that a breach of plea agreement must be established by a preponderance of the evidence.

2

financial statement under oath;" and, 2) "to abide by any conditions for release pending sentencing." (D.E. #17 & 22)

The arraignments for the Kings were held before Magistrate Judge Robert Jones on January 16, 2013, at which time both defendants pleaded guilty to the crime of bankruptcy fraud, as charged in the criminal information. That same day, Judge Jones entered an order releasing both defendants prior to sentencing, with the condition that they " . . . must not violate federal, state or local law while on release." (D.E. #18 & 23).

## II.  POST-ARRAIGNMENT VIOLATIONS OF THE COURT ORDER & PLEA AGREEMENT BY THE KINGS

Based upon information that the government has received from the Chapter 7 Trustee appointed by the Bankruptcy Court, and other sources, we have reason to believe that the Kings continued to hide assets from the Bankruptcy Trustee and evaded income taxes that were due and owing to the United States, after they singed their plea agreements with the United States. This pattern and practice of financial self-dealing has effectively defrauded their creditors and the Bankruptcy Trustee. Moreover, these financial arrangements constitute a continuance of criminal conduct by the Kings *after* they pleaded guilty and were released on conditions by this Court.

3

a) *Attempts by the Government and Probation Office to Secure Financial Statements from the Kings*

The probation office initially requested a financial statement from the Kings in December 2012, in anticipation of the upcoming plea/arraignments before Judge Jones. Through counsel, the Kings declined to provide a financial statement to the probation office, stating that their clients wish to rest upon submissions made to the bankruptcy court in terms of their assets and liabilities. Subsequently, in March 2013, the probation office again asked the Kings to provide a financial statement. Through counsel, the Kings again declined to provide a financial statement.

Soon thereafter, undersigned attorney contacted counsel for Donnie King to request a financial statement, pursuant to the terms of the plea agreement. At that time, Counsel for Mr. King indicated that the Kings had no bank accounts, no income, nor any assets.

Further discussions and consultations between the probation office, undersigned attorney, and counsel for the Kings ensued. Eventually, in late April 2013, the Kings provided a financial statement to the probation office. As the government and probation office learned later on, that financial statement was woefully inaccurate and substantially misstated the nature of the Kings' financial affairs. The Government continued to press

4

counsel for the Kings to turn over additional financial records. In June of 2013, counsel for the Kings forwarded all of the accounting ledgers for Lou's Flower World to the Government.[2] These ledgers had been maintained on Inuit "Quickbooks" software.

   b) *Review of Lou's Flower World Accounting Ledger*

The electronically maintained ledgers files contained sales, expenses, and other financial transaction records of Lou's Flower World for the two year period from May 2011 through June 2013. The government carefully examined the sales, expense, and other account activities for the noted period by creating summary and detail reports in the Quickbooks program. The expenses included payroll and contract labor charges for various employees, but none for Donnie or Lou King.

The records also included an account for "Employee Advance" which showed $170,953.00 of withdrawals by the Kings as cash, personal expenses, and house payments. Other expense accounts also included charges for animal care, cable charges, grocery

---

[2] Prior to filing a petition for relief under Chapter 11 of the Bankruptcy Code, Mr. & Mrs. King owned and operated a flower shop known as "Lou's Flower Patch." After filing for bankruptcy, the Kings re-named the business "Lou's Flower World" and continued to operate it in the same location. According to the Kings, the nominal owner of the flower shop was David Dickey. Mr. Dickey is a long-time friend and business associate of the Kings. Even though Lou's Flower World was nominally owned by Mr. Dickey, the business was controlled, managed, and operated by the Kings.

5

store charges, and an attorney fee which may also be personal expenses.

   *c) Investigation by the Bankruptcy Trustee*

Separately from the efforts of the government and probation office, James Angell, the Chapter 7 Trustee appointed by the Bankruptcy Court, conducted an investigation into the ongoing financial affairs of the Kings. His investigation was spurred by a creditor who, in the fall of 2012, informed the Trustee that, after closing Lou's Flower Patch, the Kings were operating a new floral shop doing business as Lou's Flower World. The Trustee reviewed an online web page for Lou's Flower World and found that it referenced Lou and Donnie King as the owners.

In the spring of 2013, the Trustee filed a motion to require Lou's Flower World to produce documents pursuant to Fed. R. Bankr. P. § 2004, including bank statements, tax returns, corporate documents and accounting records. The Kings were mostly compliant with this request. Shortly after that request, the Kings sent a letter to the web-hosting service that maintained the website for Lou's Flower World asking that the website not attribute ownership of the store to the Kings and the website was changed accordingly.

In June 2013, the Trustee filed a set of Motions pursuant to Fed. R. Bankr. P. § 2004 seeking documents and testimony from Donnie King, Lou King and David Dickey, the nominal owner of

6

Lou's Flower World, and Mary Lynn Pourcho, the bookkeeper for Lou's Flower World.

At the Kings' Section 2004 depositions, which occurred in July 2013, one or both of them stated that Lou's Flower World paid for their rent, gas, car payments, insurance, cigarettes, massages, charitable donations, utilities and attorneys' fees and that they made frequent ATM cash withdrawals for spending money. They said they did not have a personal bank account (until one was recently established, after the Rule 2004 motions were filed) and made personal expenditures from Lou's Flower World because they were worried about the Trustee's ability to collect claims against them relating to the trust funds that were not disclosed in their personal bankruptcy.

The Kings testified that their agreement with David Dickey was that that they could jointly be advanced through withdrawals or payments up to $1,000.00 per week, representing $500.00 per week salary for each of them. Despite receiving substantial payments to them or for their benefit, the Kings accrued their payroll on the company books and did not pay taxes on what they received as "advances."

The nominal owner of the flower shop, David Dickey, confirmed that the Kings were in control of Lou's Flower World, that he lent his name to it in order to help them out because "they were nervous about some of the stuff that was going on

7

with bankruptcy and so forth." The Kings could use the money of the company however they saw fit, although the advances were not to exceed what the Kings thought they were worth in salary. He said they ran it and he tried not to get involved in the company. He said he has never reviewed the general ledger or the financial statements of the company.

Ms. Pourcho testified that the Kings made the decision to take advances instead of paying themselves salary and instructed her accordingly. She said the Kings handled salary which was paid through Paychex. She said that the Kings decided, while the Rule 2004 examinations were being taken, to amend the Lou's Flower World tax returns to eliminate the advances to them and to show them as income, issuing 1099s.

### III. RESPONSE BY THE KINGS TO THE EXPOSURE OF THEIR POST-PLEA FINANCIAL DEALINGS

The Kings have several times recast the facts in this case to protect themselves, then Lou's Flower World from any collection efforts on the part of the Trustee, including changing the website, paying personal expenses through the company, then opening new personal bank accounts once this was discovered and amending the advances to reflect salary once these facts were exposed.

Additionally, once these facts were exposed, and since the government had received the accounting ledgers of Lou's Flower, the Kings have filed amended tax returns for 2012, to reflect the previously unreported income from Lou's Flower World.

## IV. THE KINGS' FINANCIAL DEALINGS CONSTITUTE A MATERIAL BREACH OF THEIR PLEA AGREEMENTS WITH THE GOVERNMENT

Based upon their own testimony and the documentary evidence, it is clear that the Kings funneled income through Lou's Flower World in an unlawful effort to conceal monies from the Trustee, as well as the Internal Revenue Service. This conduct, which continued for at least six months after they signed their plea agreements, is precisely the same felonious conduct to which they pleaded guilty in the criminal information. But for the post-plea efforts of the probation office, the government, and the Trustee, the Kings would not have revealed the true state of their financial affairs, thereby knowingly and willfully defrauding their creditors, and unlawfully failing to pay over income tax due and owing to the United States. This conduct by the Kings is of particular concern, because it is the same conduct that led to the defendants' being charged in the first place, and it is a derogation of the letter and spirit of their pre-indictment plea agreement.

9

As the Fourth Circuit has held, " . . . where a defendant has materially breached the terms of the plea agreement, the government is released from its implied reciprocal promises." United States v. Bowe, 257 F.3d 336, 342 (4th Cir. 2001). In view of the Kings' conduct, the United States respectfully requests permission from this Court to be relieved of our obligations to conform to the terms of the plea agreement in two specific areas:

    1)    In Paragraph 5.a, the United States agreed that the Kings are entitled to a 3 level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(b). In view of the conduct outlined above, the United States no longer believes that the Kings are entitled to any reduction in their adjusted offense level for acceptance of responsibility.

    2)    In paragraph 5.b, the United States stipulated that the readily provable loss for purposes of U.S.S.G. §2B1.1(b)(1) was less than $200,000.00. In view of the approximately $170,000.00 in concealed income from Lou's Flower World described above, the United States believes that the loss amount for purposes of guidelines calculations may be higher. We await

10

the determination of loss by the probation officer, which we anticipate could be more than $200,000.00.

Aside from the stipulations contained in paragraph 5 of the plea agreement, the United States believes that the Kings may be eligible for a 2 level sentencing enhancement under U.S.S.G. §3C1.1 for obstructing or impeding the investigation, prosecution, and sentencing of the instant offense. Application Note 4(H) to U.S.S.G. §3C1.1 makes clear that "providing materially false information to a probation officer in respect to a presentence or other investigation for the court" is included in the non-exhaustive list of conduct which may trigger application of the enhancement. The government contends that the April 2013, financial statement provided the probation office was materially false, inasmuch as the Kings did not disclose the fact that they had accrued over $170,000.00 income on the books of Lou's Flower World over the two preceding years.

More broadly, the United States believes that, by the very terms of the plea agreements, the Court should consider relieving us of our obligations contained therein. Paragraph 5 of the plea agreement makes clear that the government agrees to the sentencing stipulations, with the caveat " . . . that if the defendant's conduct prior to sentencing changes the circumstances with respect to any such factors, the United

11

States is no longer bound to its positions as to those factors." At the time that United States entered into the plea agreements with the Kings, we were not aware that they were accruing substantial income on the books of the Lou's Flower World, nor were aware that this income was going unreported to the IRS.

## V. CONCLUSION

It is important to emphasize that the United States does not seek to vitiate the entire plea agreement, nor do we believe that the Kings are entitled to vacatur of the entire plea agreement. The Fourth Circuit, when faced with a contumacious defendant who had breached his plea agreement, only voided a portion of a plea agreement which had obligated the government to dismiss certain charges against a defendant, rather than vitiating the entire plea agreement. United States v. Lamont Miller, 2013 WL 2996455 (4th. Cir. 2013). In reaching this conclusion, the Miller decision cited persuasive authority from the Third Circuit, which has held that " . . . the defendant's breach of a plea agreement does not permit him to withdraw his guilty plea." United States v. Huang, 178 F.3d 184, 189 (3rd Cir. 1999).

In view of the foregoing, the United States requests that the Court convene a hearing to determine whether the Kings have

breached their plea agreement. If the Court were to grant this request, the United States is prepared to call witnesses who will testify as to the facts outlined in this motion.

Respectfully submitted this 3rd day of October, 2013.

THOMAS G. WALKER
United States Attorney

/s/ Evan Rikhye
EVAN RIKHYE
Assistant United States Attorney,
Criminal Division
U.S. Attorney's Office
310 New Bern Avenue, Suite 800
Raleigh, NC 27601
Phone: 919-856-4530;
Fax: 919-856-4487
e-mail: evan.rikhye@usdoj.gov
Member of the Maryland Bar

CERTIFICATE OF SERVICE

This is to certify that I have on the 3rd Day of October 2013, served a copy of the foregoing Notice upon counsel for the defendants in this action by electronically filing the foregoing with the Clerk of court using the CM/ECF system which will send notification of such filing to:

            Jason R. Harris
            Attorney at Law
          Welch and Harris, LLP
    P.O. Box 1398, Jacksonville, NC 28541
       Telephone:  910-347-0161
       Facsimile:  910-347-0164

          Benjamin W. Deaver
        Deaver & Deaver, PLLC
          705 Princess St.
         Wilmington, NC 28401
           910-362-1919
          Fax: 910-362-1936

                                 */s/ Evan Rikhye*
                                 Evan Rikhye
                                 Assistant United States Attorney
                                 Criminal Division
                                 U.S. Attorney's Office, EDNC
                                 310 New Bern Avenue, Suite 800
                                 Raleigh, North Carolina 27601
                                 E-mail: evan.rikhye@usdoj.gov
                                 Telephone: 919-856-4530
                                 Fax: 919-856-4487
                                 Member of the Maryland Bar